Our third argument is 20-1039 United States v. Jean-Pierre and Ms. Hayes for the appellant you may proceed. Thank you your honor, may it please the court Megan Hayes appearing on behalf of Mr. Jean-Pierre. This case presents the issue of whether the jury instructions failed to explain the government's burden of proof on an element of securities fraud. Just by way of a very brief overview, this was a complicated conspiracy and securities fraud case. Mr. Jean-Pierre was convicted of participating in a scheme to conceal William Sears' felony conviction, his role, his ownership interests, Infusion Farm and other business entities controlled by Sears. I'd like to address the second issue in Mr. Jean-Pierre's opening brief, which is the jury instruction issue. Mr. Jean-Pierre had proposed two jury instructions number 2932 A and B, they seem to be numbered and lettered differently, it's a bit confusing, that explain the securities laws and rules and that the government must prove that Fusion Farm securities were not registered with the SEC or subject to a registration exemption under rule 144. There was no instruction given by the district court on the general rules and regulations applicable to federal securities laws. Even the government had requested these two of these instructions as well. The instructions that the government in this appeal included with its brief from the Gordon case were extensive on securities laws and regulations, multiple instructions explaining those laws. The district court didn't just use the 10th Circuit patterns or instructions? It wasn't, there doesn't seem to be a pattern instruction unless I'm missing something, but it did use just the words, the language from the statute itself, yes, your honor. Well, why isn't that, why isn't that adequate for both the court and the jury to understand the elements of the crime? Well, because it's a complicated crime, it's unclear what the jury did understand in this case. Fundamentally, what the government had to prove beyond a reasonable doubt was that Mr. Jean-Pierre was involved in making a material misrepresentation of material fact, and that misrepresentation had to do with securities laws and regulations regarding exemptions from registration. Perhaps that's one way that there could have been a material misrepresentation, right? Is that, that he made a false statement in saying that it was exempt under Rule 144? It is, you're correct, your honor, it is one way. And as the indictment set out, the other ways that you are suggesting, I'm assuming, and artifices to defraud, is that what you're referring to, the other ways? The third way, engaging in acts, practices, and courses of business that operated or would operate as a fraud, it just is evident that these all still boil down to making a misrepresentation of material fact. All of these, in different ways, using different language, but they still come down to that essential point that he had to defraud or misrepresent in some way. But it didn't have to necessarily have to do with whether he was exempt under Rule 144, did it? I mean, how about not telling people about the criminal, the felony convictions of the people involved with the company? That's a material omission, isn't it? It's information that a reasonable investor might find important in making his or her decision. Correct, your honor. It's just there's no way of knowing which of those prongs the jury convicted him under. And, you know, it does seem all of the evidence that was used, particularly in the context of these three sales. So there were three particular sales, one in 2012 and 2013, of Fusion Farms stock, that are at issue in this count, I'm sorry, in counts 21, 22, and 23. There are specific stock sales that he used Rule 144 to say that these securities are exempt from registration. So, well, even if we focus just on that as a misrepresentation, the jury was clearly instructed that the government had to prove beyond a reasonable doubt that the statement of material fact was untrue. So they were told they have to find that he that beyond a reasonable doubt that the statement I'm exempt from Rule 144 or I'm exempt under Rule 144 is false. That that's correct, but it's false because because they're not exempt. And so the issue here is, did the jury understand that they were false because they weren't exempt? And again, it's a complicated case. It was a 12-day trial. One juror nodded off several times, was asked by the district court, are you still with us? It's a difficult case for a lay jury to keep track of all the entities, all the people involved. It was a complicated scheme. There's a fair amount of securities law that is not easy for even lawyers to grasp. I found myself having to study up on my corporations quite a bit. I took notes and it just seems that it's beyond the pale for a lay jury to really keep track of what was the misrepresentation of material fact and why did that violate federal securities laws? The second issue I'll just touch on briefly, the admission of 404B evidence. The reason why we've appealed that issue, and I understand the government has argued harmless error and that this was intrinsic to the crime, it predated the crime significantly. It was seriously prejudicial evidence because it involved a family member who testified in what was an otherwise very dry, difficult trial for jurors to follow. This then injected a very human element into the trial that was closely watched by the trial, because you've got an uncle taking advantage of a newly admitted attorney. Isn't it harmless because that was already injected into the trial? I mean, isn't that your problem here? This human element of the niece was already part of the trial by the time this exhibit came in. Yeah, it just poured gas on the fire, if you will. Doesn't that just make it cumulative? I mean, it could have been a proper objection that it was cumulative. There was an objection that it was cumulative. He did make that. It was cumulative. It was unnecessary. They didn't need it. She testified to that. But that's not been appealed. The objection for its cumulative nature hasn't been appealed. That's correct, Your Honor. And so because you didn't object to Exhibit 11, which brought in all of the testimony about Denise saying, I've never seen this form before, this is not my signature, I didn't sign these. I mean, it seems to me that if you're doing the 404B analysis and even if you could put, you know, you could meet that it was for an improper purpose, you have a hard time on the balancing of prejudice because you've already been prejudiced so much that this is like a feather added to the scale. Well, it wasn't a heavy feather, it was 12 letters with her signature. I mean, yes, she did testify to that. That testimony should have been sufficient. But there were 12 additional letters from 2009. This is, again, a year before this conspiracy even was alleged to have begun. They had nothing to do with this crime. And it's like any picture introduced at trial. Its weight is heavier than oral testimony because the jury takes those exhibits into the jury room for deliberations. And it's very powerful evidence to see 12 letters with her signature. But without the other testimony, the jury would have no way of knowing that there was any problem with those 12 letters. All the testimony that came in and all the evidence that came in had already provided the jury with the information that Denise's signature had been forged. That's correct, Your Honor. It's just our position that the power of the the visual power of those exhibits was extremely prejudicial. Do this for me. What is your do you have a do you have a case with a similar similar background to this one where some substantiating documents came in to bolster some some oral testimony and it was found that they were so much more powerful than the oral testimony that they were you should have been excluded. Well, I sure wish I had that case, Your Honor, I had no something like that, I have not found a case like that, although, you know, it's similar to photographs, right? Photographs that photographs are much more that it's not this case, obviously, these are written documents, but the power of a photograph has certainly been argued and argued and, you know, the prejudicial nature, for example, of gruesome photographs of a crime scene. Right. But that has that has to be pretty substantial because there are certainly cases where there's been, say, officer testimony of a bloody crime scene where there's been a murder. And then we've also allowed the introduction of photographs of the victim. And certainly your argument could be made in those cases and may arguably be even more compelling than than what you're presenting. I'm sorry, I did didn't quite follow that, the picture, the pictures of the bloody body as bolstering the officer's testimony, I mean, those those could be even even more prejudicial and heart wrenching to a jury than than a stack of letters. Yes. And I'm not I'm excuse me, I'm not trying to suggest that it's an analogous situation, but you had raised the question, do I have a case? I don't have a case with these facts. And you just you just made me think about it. I mean, that would be something of a different crime, similar situation. And we've certainly let both of those in. Yeah, well, I guess I'm sorry I brought that to your attention. But if there are no further questions, I would reserve my remaining time for rebuttal. Thank you, Counselor May. Let's hear from the government. Good morning again, may it please the court. In the Robinson case in 1992, this court said it has long been the rule that a specific objection to the instructions actually given must be made to preserve any alleged error. And here the defense made no specific objection. They just said that defendants proposed instruction B had additional language, which we would still request. And in that destruction here, I refer to volume one, pages 636 to 640. It asks for eight discrete changes to the government's proposed instruction. And in the second amended instruction, the defense reasserted those objections as well as proffering a revised instruction. That's volume one, 783 through 786. Rule 30D says that a party must inform the court of the specific objection, or as this counsel must state distinctly the matter objected to in the grounds. Therefore, fair to do so precludes appellate review excepted except as permitted under Rule 52B. And Rule 52B accepts instructional errors that are both plain and affect substantial rights. Excuse me, isn't it obvious what the objection is here? All you have to do is compare the two submitted jury instructions. And what they're saying is our objection is we want our instruction, not the instruction that you're given. I mean, I'm not persuaded by your waiver argument, and maybe it's because I'm remembering many instances where we had a jury instruction conference off the record. And then we came in with the court reporter sitting there. We quickly went through and noted for the record which instructions we are reserving our objection for appeal. And all you have to do is look at the two instructions and say, we want the one we proposed. Well, they certainly did say that, but the one they proposed had multiple issues raised in it. There was never a specific objection to the court saying, Your Honor, we understand what you just said, but we still think it's legally insufficient for not including an additional element regarding the registration or exemption of securities. If we go the route of saying this is adequate, I think we almost read Rule 30 out because the defense hasn't invoked Rule 30. They said Rule 51 governs this. And I regard, I believe that Rule 30 is a specific exception to an otherwise general preservation rule in Rule 51. But I understand what the court is saying, but I think reading these two together is problematic. Let me turn to the merits. This court doesn't review jury instructions in isolation, but rather seeks to determine whether the jury considering the instructions as a whole was misled. Here, the instruction sets out four specific means of satisfying first element. The defendant knowingly and willfully employed any device scheme or artifice to defraud, made any untrue statement of material fact, admitted a material fact, or engaged in a transaction, practice, or course of business which operator would operate as a fraud or deceit. Now, the instruction that we're arguing about here would have had more bearing on the second third means of satisfying that first element, making an untrue statement about or omitting a material fact. But as the court explained, that instruction would have left the jury to wonder why the other possible means were not explained as well. And to put a fine point on it, the defense instruction would lock the government into the defense's theory of the case. They focus on the claim of an exemption as the one false statement, but there were many others. And so here I would refer to the court to the indictment, which is Volume 1, 367  The defendant helped conceal Sears controlled a microcap from a FINRA investigation by creating a fraudulent backdated document saying the company had been transferred six months later. That's count 21. Count 22. He followed up by lying to the investigator about supporting documentation. Sorry, that's also count 21. Count 22. Similarly, he created help, created a backdated promissory note to hide Sears ownership of Bayside. That's count 22. Count 23. He also created a backdated agreement falsely showing that a third party had bought 500000 shares of Mead Point stock. These are freestanding acts of fraud and deception that don't depend on whether the securities were exempt or not. And this is all apart. I think your opponent's argument is that we can't tell what the jury found in terms of what the material misrepresentation was and that it might have been a false statement with regard to an exemption under Rule 144 and that therefore the jury wasn't in a position to make that determination without more information about the requirements of 144. What's your response to that? Well, my response is, as before, that false statements and material omissions are two or four alternative means of satisfying the first element, and the defense doesn't cite a single case supporting this claimed additional element for a securities fraud offense. We noted this in our answer brief. The reply brief didn't address it. And as Chief Judge Tempkiewicz indicated, this tracks the 10th Circuit jury instructions. So one must find some legal error here, some case suggesting that there is an additional element that no one knew about regarding two of the four means. And I think I think that's the key thing here. Now, I do want to address the question about whether there was a general securities law instruction, because both the government and the defense proffered these extensive instructions that talk about elements and did have a lot of additional narrative about securities fraud instructions. The court did give a final instruction on Rule 144 of securities law, and that's at Volume 1, page 910. It was not a big sprawling thing talking about here's the statute, here's the rule, now here's that, you know, and that's what that was what the court's whole point was. We don't need a long narrative talking about this in the context of two of four distinct means of proving an offense. We want to talk about, you know, we have the Gordon case, which approved instructions very similar to the ones at issue here. Not identical, but very similar. Gordon had a separate 144 instruction, didn't it? Yes, but again, I would refer to the court's final instruction on Rule 144 at Volume 1, page 910. Now, one might quibble whether it should have been more or should have been less, but there was a 144 instruction. It wasn't quite as extensive as the one in Gordon, but if we're just looking at the one in Gordon, it's about a page and a half and double spaced. And the one that the court gave here is about a page single space. So, and of course, the 144 instruction, as I understand it, is not at issue here. There is not a claim on appeal that the real problem here is the 144 instruction. The claim on appeal is the problem is you did not instruct as to this additional element, which related to two of the four means of demonstrating a securities fraud offense. If we want to talk about harmlessness, I'll just touch on that briefly. Even if a statute includes an implied element, which I think is the nub of the argument here, the Christie case from 2019 tells us that the failure to instruct on that element is harmless if the record contains no evidence that could rationally lead to a contrary finding with respect to that claim. And the evidence that the securities here weren't exempt was uncontroverted. This is volume 4, 2370 to 71. And that's why the defense doesn't even attempt to identify any evidence on the other side of the ledger. This was not really a point of contention. I'm happy to move to the exhibit if the court has no further questions on this phase. Okay. The 12 attorney letter agreements relating to the pre-2011 forgeries helped explain why D. Tommaso was hired to change the letterhead and put his own signature on the market filings for fusion farm and related entities. They also explained the beginning stages of the offense conduct. That is, they were pre-eliminated the crime charge. They didn't involve any of the co-conspirators here, did it? Those earlier letters? It did not. So, I mean, isn't it more like a drug sale that comes before the drug sale sentence being convicted on? I mean, this isn't intrinsic, is it? It absolutely is, your honor. I refer the court to the Wacker decision from 1995, where the trial court admitted evidence of prior drug trafficking offenses from 1997, 1980, 1981, 82, and 84. And the defendant was arrested in 1990. And the court said the prosecution used this testimony to show a longstanding pattern of drug activity from the late seventies until his arrest in 1990. Viewed in this light, this evidence is not unrelated to remote, but is related to the criminal activity charged in the indictment. But the Wacker report is performing a 404B analysis. It is not making those statements to find that the evidence is intrinsic. It's making that evidence that those statements for the side of the 404B weighing in terms of what its probative value is. There's no discussion about intrinsic in Wacker. So, I'm sorry, your honor, I was segwaying into, you're right. It's intrinsic because it is of the piece of the same conduct. There was a continuous pattern, not with the same defendants, but with the same individual, his niece, preceding the charged offense in this case and then into the charged offense in this case. But the niece is one of the co-conspirators on the crime of conviction, right? The niece is never named as a co-conspirator. That's right. I don't, I don't know if that's required, your honor. And I would point to the Rafferty case. We, from the 11th circuit, we cited that we had evidence of the 1991 securities fraud conviction, 93 securities fraud, civil injunction, two civil fraud judgments from 2003. And those were deemed intrinsic to mail and wire fraud charges. Because again, it's a part of the same overall conduct. It's part and parcel. But we want to talk about 404B. We've discussed Wacker. And I would also say the exhibit served the proper purposes for which it was offered, the motive for having another attorney sign the letters, that what he did with Bayside, Microcat, Mead Point, and Fusion Farm was part of a similar plan. And three, knowledge as well as absence of mistake or accident. And this relates, and we should keep this in mind. This relates not just to the securities fraud counts 21, 22, and 23, but also to the overall conspiracy charge in count one. And in fact, the opening brief concedes that exhibit 47 was proper. And that exhibit included one of the opinion letters that Jean-Pierre filed using his niece's misappropriated signature. So again, I think we come back to, I think it was Judge Carson earlier saying, yeah, maybe the argument one could make is this is cumulative, but that's not raised on appeal. And in terms of prejudice, this, I think a feather is probably the right analogy. And what we're doing is arguing about whether it's a sparrow or an ostrich feather, but any, either way you cut it, this did not have much effect one way or the other. There's limited probative value and limited prejudice. And looking at those two things, I think there's not an issue here. What about, was there a limiting instruction? There was a limiting instruction. Let me, let me back up. Yeah. The defense did not contemporaneously request a limiting instruction, but in its final instructions, the court told jurors that could only consider similar acts evidence as it bears on the defense intent preparation plan or knowledge. And for no other purpose, that's in volume one, page 884. So at the end of the day, the conviction should be affirmed. Thank you. Thank you, counsel. We had some rebuttal. Yep. Just very briefly, because I only have a little over a minute. There wasn't a contemporaneous limiting instruction because the court said this is intrinsic to the crime, the letters, the 12 letters, and so it's not 404B. And so there won't be a limiting instruction. On the, the waiver issue, I don't want to spend a lot of time, but on volume four, page 2,457, the court specifically, again, asked defense counsel, you are not waiving your objection, correct? And he says, correct. I am preserving this issue. And finally, on the harmless error, on the jury instruction that the government cites, you know, three pages of evidence, you know, excerpts from the trial transcript showing, you know, why this was this first element of securities fraud was proven beyond a reasonable doubt. But, but the trial was not conducted in that sort of logical order where that information was set out so succinctly for the jury, this was a 12 day trial. It was complicated. It's nice that the government has set that out in chronological order for the court, but that is not how the jury heard this evidence. We would ask that the court reverse and remand for a retrial on counts one and 21 to 23. Thank you. Thank you, counsel. Counselor excused and the case shall be submitted.